1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

ELIZABETH HATCHER,

              Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

              Defendant.

CASE NO.   **C07-5019RBL**

REPORT AND
RECOMMENDATION

Noted for September 7, 2007

17

18

19

20

    This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W.
v. Weber</u>, 423 U.S. 261 (1976).  This matter has been fully briefed, and after reviewing the record, the
undersigned recommends that the Court affirm the administration's final decision.

21

<u>INTRODUCTION</u>

22

23

24

25

26

    Plaintiff, Elizabeth Hatcher, was born in 1957, completed the 11th grade and earned a GED.  Ms.
Hatcher stopped working in September, 2001 while employed in a warehouse at a plastic molding
company.  Prior to that, she worked as a waitress.  She quit waitressing due to difficulties performing the
required lifting, standing and bending. Plaintiff was experiencing pain in her head, neck, right arm and
lower back.

27

28

    On October 30, 2001, Plaintiff filed an application for social security disability insurance benefits
("DIB") (Tr. 84-86).  She alleged disability since August 14, 2001 due to nerve and muscle damage to the

1   right arm, right neck and right hip (Tr. 84, 100).  After the application was denied initially and upon

2   reconsideration, plaintiff requested an ALJ hearing.

3          On December 3, 2002 an administrative law judge ("ALJ") conducted an administrative hearing

4   and subsequently, the ALJ issued an unfavorable decision on January 13, 2003 (Tr. 11-20, 319-352).

5   After the Appeals Council declined review, plaintiff filed a complaint in this Court (Tr. 11-13).  Pursuant

6   to a stipulation of the parties the matter was remanded to the administration to reassess lay witness

7   testimony, new issues raised, plaintiff's residual functional capacity ("RFC") and past relevant work as

8   well as obtain testimony from a vocational expert ("VE") (Tr. 387).

9          A second administrative hearing was conducted on September 22, 2005 by a different ALJ (Tr.

10  447-507).  After reviewing the evidence, including testimony from the VE, Plaintiff's application for

11  disability benefits was again denied (Tr. 373-383).  The ALJ specifically concluded that Plaintiff retained

12  the ability to work as a small products assembler, solderer, or video rental clerk (Tr. 383).  After the

13  Appeals Council declined review, the ALJ's findings and conclusions became the final administrative

14  decision for review by the court.

15         On January 14, 2007, Plaintiff filed her Complaint with the Court seeking judicial review of the

16  administrative decision.  Plaintiff raises the following issues:

17         1. Did the ALJ err by ignoring opinions from multiple physicians?

18         2. Did the ALJ err by failing to order a consultative exam and additional medical testing to assess

19  the limitations from plaintiff's "severe" brachial plexopathy?

20         3. Did the ALJ err by rejecting Mr. Hatcher's testimony?

21         4. Did the ALJ err by rejecting plaintiff's testimony?

22         5. Did the ALJ err by formulating a RFC without following SSR 96-8p?

23         6. Do the steps 4 and 5 findings violate the SS rulings and regulations?

24                                          DISCUSSION

25         This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the

26  proper legal standard and there is substantial evidence in the record as a whole to support the decision.

27  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence

28  as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S.

389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less

than a preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v.

Sullivan</u>, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational

interpretation, the Court must uphold the Secretary's decision.  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th

Cir. 1984).

## A.  THE ALJ PROPERLY DEVELOPED AND ASSESSED THE MEDICAL EVIDENCE

The ALJ is entitled to resolve conflicts in the medical evidence.  <u>Sprague v. Bowen</u>, 812 F.2d

1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical

experts.  <u>Walden v. Schweiker</u>, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is

contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific

and legitimate reasons" supported by substantial evidence in the record for doing so.  <u>Murray v. Heckler</u>,

722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute

substantial evidence that justifies the rejection of the opinion of either an examining physician or a

treating physician."  <u>Lester v. Chater</u>, 81 F.3d 821, 831 (9th Cir. 1996).  In <u>Magallanes v. Bowen</u>, 881

F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's

opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the

ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from

the claimant that conflicted with the treating physician's opinion.

Plaintiff argues the ALJ failed to properly assess the opinions of Dr. Hack, Dr. Ogisu, Dr. Strong,

and Dr. Anderson.   Each of these medical providers' opinions and the ALJ decision with respect to each

is discussed below.

### A. Dr. Arthur G. Hack, Chiropractor.

Plaintiff was treated for two years following a work related injury in 1987 by Dr. Hack, a

chiropractor.  In a report completed in 1992, Dr. Hack noted mild headaches, moderate to severe back

pain, shoulder pain and spasms and numbness in her right arm and hand, as well as "pins and needles" in

the right hand (Tr. 170).  Plaintiff argues Dr. Hack's opinion supports only part-time sedentary level work

"with little demand for bending and lifting and lifting limited to 10 pounds or less."  Plaintiff argues the

ALJ ignored Dr. Hack's opinion evidence and it does not support the ALJ's RFC, which indicates

1    Plaintiff is capable of light work with occasional reaching and no overhead reaching on the right.

2         The ALJ did not ignore Dr. Hack's treatment records as suggested by Plaintiff.  The ALJ

3    specifically discussed Plaintiff's injury in 1987 and stated she has experienced pain since that time (Tr.

4    375, 377).  The ALJ noted, "The record shows a history of chiropractic treatment in the 1980's and early

5    1990's but none in recent years" (Tr. 378).  The ALJ discussed Plaintiff's limitations, stating:

6         The claimant has alleged low back pain and hip pain but there is no evidence of limitations
          in standing or walking.  She has been diagnosed with mild thoracic scoliosis but no other
7         conditions.  Her allegation of leg length discrepancy is not supported by the treatment
          record.  The claimant's right upper extremity impairment results in limitations in lifting
8         and reaching.  However, these problems began in 1987 and she was able to work for many
          years despite this condition.  There is no evidence that her problems with right-side
9         weakness have worsened since she was last able to work.

10   (Tr. 380)

11        In sum, the 1992 assessment by Dr. Hack significantly predates Plaintiff's alleged onset date of

12   August 14, 2001.  The period under review by the administration is essentially August 14, 2001 through

13   November 4, 2005, the date of the ALJ's decision.   As noted by the ALJ, the fact that Plaintiff

14   successfully worked for many years following Dr. Hack's report and opinion diminishes its relevance to

15   Plaintiff's limitations during the relevant period, and the ALJ properly did not give any significant weight

16   to Dr. Hack's opinion proffered in 1992.

17        *B. Dr. Tatsuro Ogisu, Neurologist*

18        Plaintiff argues Dr. Ogisu's opinion supports limitations in repetitive movement, sitting limited to

19   30-60 minutes, standing 15 minutes, walking limited to 1 block and lifting 5-10 pound lifting limitations

20   due to right brachial plexopathy versus musculocutaneous neuropathy, chronic right lumbar radiculopathy

21   and mild thoracic scoliosis with worsening "moderate" pain (Tr. 193-195).  Plaintiff again alleges that the

22   ALJ improperly ignored this opinion.

23        A review of Dr. Ogisu's opinion report does not support Plaintiff's argument.  Plaintiff overstates

24   Dr. Ogisu's diagnoses and assessment of her  limitations.  Plaintiff's Opening Brief at 12-13.  The ALJ

25   relied upon the opinion of Dr. Ogisu when he accepted the diagnoses of right brachial plexopathy as a

26   severe impairment (Tr. 375).  Dr. Ogisu's statement of  limitations was that Plaintiff's "general level of

27   pain is moderate", "[s]he demonstrates effective coping behavior", and "[t]he patient's stated limitations

28   are reflective of her impairments but probably are modestly overstated."  Tr. 195. As discussed below, the

1   ALJ properly found Plaintiff's subjective reports not credible, which supports Dr. Ogisu's comment

2   regarding Plaintiff's overstated limitations and further undermines Plaintiff's argument that Dr. Ogisu

3   assessed more severe limitations than assigned by the ALJ.  In sum, the ALJ accepted Dr. Ogisu's

4   diagnoses and the ALJ's assessment of Plaintiff's RFC assessment is consistent with Dr. Ogisu's report.

5         *C. Dr. Marylou Strong and Dr. Bruce C. Anderson*

6         Under the title, "THE ALJ ERRED BY IGNORING THE LIMITED FUNCTIONAL ABILITIES

7   IDENTIFIED BY CHIROPRACTOR HACK AND DRS. OGISU, STRONG AND ANDERSON AS

8   WELL AS RELYING UPON OUTDATED REACHING LIMITATIONS BY THE NONEXAMINING

9   DDS PHYSICIANS" Plaintiff argues:

10        Dr. Anderson found decreased range of motion of the right arm posteriorly, overhead and
          on rotation. (Tr. 434).  Dr. Strong noted all motions were decreased and painful in right
11        shoulder, increasing pain and instability with popping. Dr. Strong diagnosed a rotator cuff
          and bicepital strain with possible tear. (Tr. 430). Treatment notes from Kaiser also indicate
12        pain upon rotation of neck (Tr. 259), neck muscle spasms with limited ROM and left
          shoulder pain (Tr. 425-6), gait limited by low back pain (Tr. 259), and limitation of left
13        arm rotation (Tr. 430-2). None of these limitations were addressed by the ALJ.

14   Plaintiff's Opening Brief at 16.  After reviewing the record and the ALJ's decision, the undersigned is not

15   persuaded by Plaintiff's argument that the ALJ erroneously ignored the opinions of Dr. Strong or Dr.

16   Anderson.

17        First, the opinions or reports of Dr. Strong and Dr. Anderson are in the record as part of Medical

18   records from Kaiser Health Plan dated April 17, 2003 through May 9, 2005 (Tr. 426-466, also referred to

19   as Exhibit 7F).  The ALJ does not specifically mention Dr. Strong or Dr. Anderson by name in his

20   decision, but he does make several references to Exhibit 7F, pages 5, 9, 13, 14, 16, 17, and 21, when he

21   discussed the medical evidence.  Each of those references, with exception to pages 9 and 21, pertain to

22   reports or notes of either Dr. Strong or Dr. Anderson.  Clearly, the ALJ did not ignore these medical

23   records.

24        Moreover, the medical records of Dr. Strong and Dr. Anderson do not support the severity of

25   limitations alleged or argued by Plaintiff.  Specifically, on August 27, 2003, Dr. Anderson opined

26   Plaintiff had "[n]early full ROM of the shoulder" (Tr. 433, Exhibit 7F, page 14).  The ALJ also noted Dr.

27   Anderson ordered x-rays which showed that Plaintiff's right shoulder was normal in June 2003 (Tr. 442,

28   Exhibit 7F, page 5).  Dr. Anderson examined Plaintiff on three different dates in 2004 and 2005 for

1    "chronic shoulder pain with loss of range of motion."  Pl.'s Br. at 14. However, Dr. Anderson performed

2    no examination at the 2005 visit, which was limited to "notes written for work" (Tr. 429).  The other two

3    visits with Dr. Anderson show no inconsistency between Plaintiff's abilities and the ALJ's RFC

4    assessment.  The ALJ discussed these reports (Tr. 375, 378), and found that Plaintiff's asserted left-side

5    limitation did not last for any ongoing 12-month period.  The court notes the ALJ found Plaintiff retained

6    greater limitations in reaching with her right upper extremity (Tr. 380).   Plaintiff has failed to show any

7    error in the ALJ's consideration of the statements or reports from Drs. Anderson or Strong.

8            Plaintiff asserts that the ALJ should have approved a request for consultative psychological and

9    neurological testing. Pl.'s Br. at 16-18. The ALJ properly addressed and declined Plaintiff's requests

10   because there was no evidence nor allegation of psychological impairment and the record was did not

11   indicate the need for additional neurological testing (Tr. 379).   Moreover, Plaintiff has failed to

12   demonstrate that the evidence was so ambiguous or inadequate as to require the ALJ to purchase

13   additional consultative examinations.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). To the

14   contrary, sufficient evidence existed for the ALJ to reach her decision without the need for further

15   evaluation, including a previous neurological examination and the opinions of Plaintiff's treating

16   physicians and primary care physicians (Tr. 379).

17           In sum, it is clear to this court that the ALJ properly considered the medical evidence and opinions

18   of record.  The ALJ decision is properly supported by substantial evidence in the record.

19   **B.      THE ALJ PROPERLY WEIGHED AND EVALUATED PLAINTIFF'S AND PLAINTIFF'S
             HUSBAND'S CREDIBILITY**

20

21           Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc), is controlling Ninth Circuit authority

22   on evaluating plaintiff's subjective complaints.  Bunnell requires the ALJ findings to be properly

23   supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the

24   adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a

     claimant's testimony regarding pain.'"  Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d

25   1210, 1215 (11th Cir. 1991)).  An ALJ may reject a claimant's subjective complaints, if the claimant is

26   able to perform household chores and other activities that involve many of the same physical tasks as a

27   particular type of job.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in

28   Fair v. Bowen, supra, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act

1   does not require that claimants be utterly incapacitated to be eligible for benefits, and many home

2   activities may not be easily transferrable to a work environment where it might be impossible to rest

3   periodically.  Similarly, the ALJ can reject the testimony of lay witnesses only if he gives reasons

4   germane to each witness whose testimony s/he rejects.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.

5   1996) Dodrill v. Shalala, 12 F.3d  915, 919 (9th Cir. 1993).

6           Here, the ALJ addressed the testimony provided by Plaintiff and her husband in detail.  He wrote:

7           The allegations of the claimant are not entirely credible in light of the treatment record, her
            daily activities, and lack of compliance with treatment recommendations.  While the
8           claimant complains of debilitating pain, she sought very little treatment in recent years for
            her complaints.

9
            The records shows a history of chiropractic treatment in the 1980's and early 1990's but
10          none in recent years (Exhibits 1F, 2F).  Records from 2001 and 2002 show treatment for
            bronchitis, scabies, abdominal pain, sinusitis and allergies (Exhibit 6F).  She sought
11          treatment for sudden onset of left chest wall and arm pain in January 2002 and was
            diagnosed with a probable sprain or strain (Exhibit 6F-11).  She requested a "functional
12          test" from her physician in May 2002 (Exhibit 6F-3).  She was not seen again until almost
            a year later, in April 2003 when she was evaluated for left chest wall pain (Exhibit 7F-9).
13          The claimant testified that she has had health insurance.  Records reflect she has received
            regular treatment for other minor conditions such as sinusitis, indicative of access to health
14          care when desired.

15          Ms. Hatcher has sought treatment more frequently since 2003.  However, treatment
            records are not fully supportive of her allegations.  In June 2003 she reported she could not
16          stand straight due to unequal leg length which she had ignored for years while she was
            busy raising a family and working.  She reported she now wanted to regain her function
17          rather than continue to deteriorate.  Films showed no leg length discrepancy (Exhibit 7F-
            13).  There is no evidence that this issue has required any further evaluation of treatment.
18          The claimant testified to headaches 3 or 4 times a week which are at a "10" on a scale of 1
            to 10.  However, she uses only Tylenol and there is no evidence of these headaches in the
19          treatment record.  The degree of pain the claimant alleges related to her headaches is not
            credible in light of the lack of treatment other than Tylenol and absences of complaints to
20          any treatment provider.

21          The claimant began physical therapy in August 2003.  She initially reported improved
            strength and motion of the right upper extremity and decreased left clavicular pain (Exhibit
22          7F-14, 16).  However, she then had some pain and quit.  She testified that her doctor
            ordered her to stop physical therapy but there is no evidence of this in the treatment record.
23          Her physician offered an injection for her worsened symptoms but she declined (Exhibit
            7F-17).  The claimant's failure to pursue recommended treatment modalities is not
24          consistent with her allegations of debilitating pain.

25          In November 2003 she was seen because she was requiring increased consumption on
            Ventolin.  Her physician stressed the need for her to discontinue nicotine abuse but she
26          responded "I am just going to keep smoking doc I don't much care" (Exhibit 7F-9).  In
            April 2005 she was seen to establish care with a new physician.  She was encouraged to
27          quit using marijuana but has not done so.  The claimant's credibility is further undermined
            by her failure to comply with these treatment recommendations.

28
            The claimant's allegations of debilitating pain are not entirely credible in light of her

activities. The claimant provided confusing and contradictory testimony. She initially testified that she never does housework but then went on to describe doing some cooking, laundry and cleaning. She testified that she cannot vacuum and then testified that she vacuums for 15 minutes on good days. She is able to drive. She testified that she cannot lift more than her 7-pound cat and indicated that she could not lift the cat up from the ground. She then testified that she is able to hoeld her 15 pound grandson while standing. She also reported bowling about every 6 months with an 8 pound ball. She reported bowling a whole game, 10 frames, using the ball 10 to 20 times. She testified that her arm "jumps" with muscle spasms and that this causes pain at a "10" on a scale of 1 to 10. She then testified that this occurs daily and lasts all day. She testified she has headaches which rate a "10" on a scale of 1 to 10 three or four days a week. She testified that these headaches last all day and night but she takes only Tylenol for the headaches. Headaches are not mentioned in the treatment record. The claimant's testimony would indicate she suffers essentially constant pain at a "10" every day. This allegation is not credible. She functions independently, does some house work, occasionally bowls, and occasionally goes fishing. She takes only 10 Vicodin per month, takes Flexeril only at night, and takes only Tylenol for her headaches.

At the initial hearing the claimant's spouse testified that her pain had become more severe. She needed help more often and took more pills. She needed help picking up heavy things around the house. She could not do repetitive work. She could walk 15 minutes and then would seize up. He reported she bowls but cold not longer bowl a whole game without "breaking down". He indicated that the last time she bowled was 3 to 4 months prior to the hearing. Previously she had bowled once a month. He testified that she cold not sit long enough to fish. He bought her a bike but she was unable to use it.

At the September 2005 hearing the claimant's spouse testified that her condition has worsened since the last hearing. Her back locks up. A couple weeks ago she was on the ground, screaming in pain. This was the second or third time this has happened recently. He massaged her back and gave her a muscle relaxer. After sitting an hour in a restaurant she could not get up to leave. For 3 days he had to help her get in the care and get out of bed.

The allegations of Mr. Hatcher are not entirely credible in light of the treatment record. He testified that she can no longer bowl a whole game but the claimant testified that she does bowl an entire game. He testified that she cannot fish but the claimant testified that she does fish. While her back may have "locked up" on a few occasions, there is no evidence that this is an ongoing problem. Her difficulties resolved with muscle relaxers and she did not require medical treatment on these occasions.

(Tr. 378-379).

After reviewing the ALJ's decision and the administrative record, it is clear the ALJ has provided sufficient evidence to discredit the Plaintiff's allegations of total disability. The record properly supports the ALJ's analysis of Plaintiff's treatment record, her daily activities, and lack of compliance with treatment recommendations. The record also properly supports the ALJ's analysis of the inconsistencies in the testimony of Mr. Hatcher when compared with the medical evidence relied upon by the ALJ and the statements of Plaintiff. The court notes it is the ALJ who is responsible for determining credibility, Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999), and the ALJ may make first-hand observations

during a hearing as a factor in assessing a claimant's credibility, <u>Morgan v. Commissioner of SSA</u>, 169

F.3d 595, 599-600 (9th Cir. 1999).  Accordingly, the ALJ did not err when he evaluated and discredited

Plaintiff's and Plaintiff's husband's testimony regarding the severity of Plaintiff's limitations.

## C.    *THE ALJ PROPERLY EVALUATED PLAINTIFF'S  RESIDUAL FUNCTIONAL CAPACITY*

If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work

activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the

claimant's residual functional capacity ("RFC") and the physical and mental demands of the work a

claimant did in the past.  20 C.F.R. § 404.1520(e).

In this case, the ALJ examined the record and concluded:

[T]he claimant retains the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently.  She can stand and walk 6 hours out of an 8-hour day and sit 6 hours out of an 8-hour day.  She cannot climb ladders, ropes or scaffolds.  She is limited to occasional reaching with the right upper extremity.  She can do no overhead reaching with the right upper extremity.  Over the last 15 years she has learned to use her left upper extremity to compensate for limits in her right extremity.

This residual functional capacity is consistent with the treatment record and the claimant's activities.  Treatment records from May 2002 who limited motor strength in the flexion around the elbow on the right side consistent with moderate biceps atrophy.  Strength in the hand and distal arm was better than around the elbow but not equal to the left side. Motor strength in the legs was normal on the left and 4+ on the right.  Deep tendon reflexes were normal and symmetrical in the patellar and Achilles tendons but diminished in the right biceps.  Fine motor coordination was normal.  Overall she exhibited deficits on the right side with some weakness and pain but no evidence of new symptoms (Exhibit 6F-3).  The claimant has alleged low back pain and hip pain but there is no evidence of limitations in standing or walking.  She has been diagnosed with mild thoracic scoliosis but no other condition.  Her allegations of leg length discrepancy is not supported by the treatment record.  The claimant's right upper extremity impairment results in limitations in lifting and reaching.  However, these problems began in 1987 and she was able to work for many years despite this condition.  There is no evidence that her problems with right-side weakness have worsened since she was last able to work.  Her right brachial plexopathy and right side weakness render her unable to lift more than 20 pounds occasionally or 10 pounds frequently.  The reaching limitations described in the claimant's residual functional capacity are consistent with her motor strength deficits on the right and evidence of pain with rotation of the neck.  She remains capable of occasionally bowling and fishing.  She manages self-care activities independently and performs some household tasks.  These activities are indicative of a capacity for occasional reaching with the right upper extremity.  However, she is precluded from overhead reaching with the right arm.  While the claimant experiences some pain, she remains capable of the residual functional capacity described above.  She worked for many years despite her right side injury in 1987.  She previously indicated she was using 4 to 8 Vicodin per day but she has dramatically cut down the medication and is no using only 10 a month.  She uses Flexeril only at night.  She briefly engaged in physical therapy, which improved her strength, but she discontinued it.  She reports she does not lie down during the day.

1    (Tr.380).

2        To a great extent Plaintiff's argument that the ALJ failed to properly assess her RFC is premised

3    on the earlier arguments that the ALJ failed to properly consider the medical evidence and her testimony

4    or credibility.  As discussed above the ALJ did not err in his assessment of the medical evidence and

5    plaintiff's limitations.  The ALJ's RFC properly reflects the medical evidence which was relied upon by

6    the ALJ.  After reviewing the record, this court does not find any error in the ALJ's evaluation of

7    Plaintiff's RFC..

8    **D.    SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT PLAINTIFF IS ABLE TO PERFORM**
9    **PAST RELEVANT WORK, AND, ALTERNATIVELY, OTHER WORK IN THE NATIONAL ECONOMY**

10       Based upon vocational expert testimony, the ALJ in this case found that Plaintiff was capable of

11   performing her past relevant work as a laundry folder as she had performed that job (Tr. 381).  Plaintiff

12   contends the ALJ erred when he relied on the expert's testimony to reach this conclusion, arguing that the

13   VE failed to explain a variation of the DOT's job description, which arguably requires frequent reaching

14   verses Plaintiff who was limited by the ALJ to only occasional reaching.  Plaintiff's Opening Brief at 20-

15   21.

16       The Ninth Circuit recently wrote:

17           At step four, claimants have the burden of showing that they can no longer perform
         their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894
18       F.2d 328, 330 (9th Cir.1990). Once they have shown this, the burden at step five shifts to
         the Secretary to show that, taking into account a claimant's age, education, and vocational
19       background, she can perform any substantial gainful work in the national economy. 20
         C.F.R. §§ 404.1520(f) and 416.920(f). *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.2000).
20       Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to
         make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§
21       404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965.  [Footnote omitted]
             This is done by looking at the "residual functional capacity and the physical and
22       mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and
         416.920(e) The claimant must be able to perform:
23               1. The actual functional demands and job duties of a particular past relevant job; or
                 2. The functional demands and job duties of the occupation as generally required
24       by employers throughout the national economy. SSR 82-61. This requires specific findings
         as to the claimant's residual functional capacity, the physical and mental demands of the
25       past relevant work, and the relation of the residual functional capacity to the past work.
         SSR 82- 62.
26   Pinto v. Massanari, 249 F.3d 840, 844-845 (9th Cir. 2001).   At step-five the burden of proof shifts to the

27   Commissioner to produce evidence of other jobs existing in significant numbers in the national economy

28   that Plaintiff could perform in light of his age, education, work experience, and residual functional

1  capacity.  *See* <u>Tackett v. Apfel</u>,180 F.3d 1094,1099 (9th Cir. 1999); <u>Roberts v. Shalala</u>, 66 F.3d 179, 184

2  (9th Civ. 1995).  In <u>Tackett</u>, the court noted "there are two ways for the Commissioner to meet the burden

3  of showing that there is other work in 'significant numbers' in the national economy that claimant can

4  perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational

5  Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." <u>Id</u>.

6       Plaintiff's allegation that the ALJ erred when he  relied on the Vocational Expert's testimony to

7  conclude Plaintiff was able to return to past relevant work  is without merit.  The ALJ's hypothetical to

8  the vocational expert clearly reflected a properly supported RFC, and the VE made it perfectly clear that

9  his testimony was being limited to a person who could only occasionally reach (Tr. 496, 499-501).

10  Similarly, the undersigned finds no error in the ALJ's step-five finding that Plaintiff, given her RFC, is

11  capable of working as a small products assembler, solderer, or a video rental clerk.

12                                          <u>CONCLUSION</u>

13       Based on the foregoing discussion, the Court should affirm the Administration's final decision

14  denying plaintiff's application for social security disability benefits.  Pursuant to 28 U.S.C. § 636(b)(1)

15  and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service

16  of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a

17  waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating

18  the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on

19  **September 7, 2007**, as noted in the caption.

20       DATED this 15th day of August, 2007.

21

22              /s/ J. Kelley Arnold
                J. Kelley Arnold
23              U.S. Magistrate Judge

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 11